**Affirmed and Opinion Filed October 10, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-00509-CV

## IN THE INTEREST OF K.C.F. AND M.C.F., CHILDREN

**On Appeal from the 303rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-17-12943-V**

## OPINION

Before Justices Schenck, Osborne, and Smith
Opinion by Justice Osborne

The trial court terminated Mother's parental rights to K.C.F. and M.C.F. under section 161.004 of the Texas Family Code. TEX. FAM. CODE § 161.004 ("Termination of Parental Rights After Denial of Prior Petition to Terminate"). In two issues, Mother contends the trial court erred because (1) the matter is barred, having been previously tried, and (2) no circumstances have substantially changed since the trial court's previous order. Concluding that appellee Texas Department of Family and Protective Services ("Department") met its burden of proof under section 161.004, we affirm the trial court's order. *See id.*

BACKGROUND

In this appeal, we review the trial court's June 3, 2022 decree ("2022 Decree") terminating Mother's parental rights to K.C.F. and M.C.F. The children, twins born in 2013, have been in foster care since August 2017. For four years, the children were in a foster home where permanent adoption was not possible. After a search for a permanent home and with the trial court's permission, the Department placed the children in a new foster home in September 2021 where adoption is a possibility.

In the 2022 Decree, the trial court found that Mother "has failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the children that have been in the permanent or temporary managing conservatorship of [the Department] for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children, pursuant to section 161.001(b)(1)(O) of the Texas Family Code." The court also found that termination of the parent–child relationship between Mother and the children was in the children's best interest.

The 2022 Decree was the trial court's ruling on the Department's motion to modify a previous order. The trial court rendered a "Final Order" dated February 28, 2019 ("2019 Order") that included findings under family code section 161.001(b) regarding Mother. *See* TEX. FAM. CODE § 161.001 (involuntary termination of parent–child relationship). In the 2019 Order, the trial court found that Mother:

1. Knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being, *see* TEX. FAM. CODE § 161.001(b)(1)(D);

2. Engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the children's physical or emotional well-being, *see* TEX. FAM. CODE § 161.001(b)(1)(E);

3. Has constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department for not less than six months, and (1) the Department has made reasonable efforts to return the children to Mother, (2) Mother has not regularly visited or maintained significant contact with the children, and (3) Mother has demonstrated an inability to provide the children with a safe environment, *see* TEX. FAM. CODE § 161.001(b)(1)(N); and

4. Has failed to comply with the provisions of a court order that specifically established the actions necessary for Mother to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parent under family code Chapter 262 for the abuse or neglect of the children, TEX. FAM. CODE § 161.001(b)(1)(O).

The court also found, however, that termination of the parent–child relationship between Mother and K.C.F. and M.C.F. was not in the children's best interest. *See* TEX. FAM. CODE § 161.001(b)(2). The court appointed the Department as the children's sole managing conservator and Mother as a possessory conservator.

In 2020,[1] the Department moved to modify the 2019 Order, again seeking termination of Mother's rights. The trial court heard the motion over several days in February and April 2022. Mother and four other witnesses testified, and several

---

[1] The Department amended its motion to modify twice. The operative pleading at trial was the Department's second amended motion to modify and for termination filed on September 15, 2021.

exhibits were admitted into evidence. We focus on the evidence relevant to Mother's failure to comply with a court order that the court cited in the 2022 Decree.

The Department offered evidence that the trial court decided not to terminate Mother's parental rights in the 2019 Order to give Mother additional time to complete services that were first ordered in 2017. In September 2017, the court ordered Mother to participate in parenting classes, a psychological evaluation, counseling, a drug/alcohol assessment, and a psychiatric evaluation. In the months that followed, the Department filed periodic reports in the trial court showing that Mother had not complied with the service plan prepared for the family so that the children could be returned home. The Department sometimes reported that Mother "has stated that she may be willing to work services moving forward," but subsequent reports and permanency orders continued to reflect that Mother had not complied with the court's orders. In October 2018, Mother filed a counterpetition to be named sole managing conservator, and the case proceeded to trial several months later, resulting in the 2019 Order.

In the months following the 2019 Order, the Department again filed periodic reports and service plans for Mother and the children. Each reflected that Mother had not completed the required services. The Department reported that the court had referred Mother "back to services as a way to demonstrate she is able to provide a stable and safe environment for the children" and that the Department was attempting to "achieve permanency" with Mother, but Mother had not complied.

In a February 3, 2021 "Review Hearing Order," the court again ordered that Mother "complete the following services: parenting classes, psychological evaluation, psychiatric evaluation, individual counseling, and follow all the recommendations of the service providers." In August 2021, Mother was evaluated by a psychologist who recommended that the children remain in protective custody and that any contact between Mother and the children be supervised. The psychologist also recommended a psychiatric evaluation, individual counseling, and parenting classes, and noted that Mother "need[s] to secure employment and housing."

Dwayla Harper, the Department caseworker, testified that at the time of trial, Mother had completed only her psychological exam. Mother started a parenting class but stopped attending after the first session. She also started and stopped individual counseling. Harper testified that she referred Mother to another agency when Mother reported that she and the initial counselor were incompatible. Mother attended "maybe a couple of sessions" before the agency discontinued the sessions because Mother "was not attending." Harper also testified that Mother missed visits with the children. Harper testified that for several years the Department had "really tried to engage [Mother] to reconnect with her children," but that "has not happened." She testified that the children were thriving in foster care but "[t]hey need their forever home."

The Department also offered evidence of its efforts to find a placement for K.C.F. and M.C.F., first with a relative and later in a home where adoption was possible. Mother herself was living with an aunt, but Mother never requested that any home study be done to determine if the children could be placed there—or in any other home—with Mother. There was a family group conference which resulted in K.C.F. and M.C.F.'s older siblings being placed, but no relative was available as a placement for K.C.F. and M.C.F. They remained with a foster family who was not able to adopt them. The Department then searched for a family who could adopt the children, and as we have noted, the children moved to such a placement in September 2021.

In this appeal of the 2022 Decree, Mother contends that (1) "[t]his matter, including the [Department's] Motion to Modify, the trial, and the final order, is barred because it is re-litigation of the same suit and issues," and (2) there are no grounds for modification because there has not been a substantial change in circumstances since the trial court's 2019 Order.

## STANDARD OF REVIEW AND APPLICABLE LAW

The involuntary termination of parental rights involves fundamental constitutional rights. *In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980). For this reason, "[d]ue process requires the application of the clear and convincing evidence standard of proof in parental termination cases." *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "Clear and convincing evidence" is defined in the family code as "the measure or

–6–

degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007.

"In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. In a factual sufficiency review, we consider "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations," giving "due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* (internal quotation omitted).

The Department sought termination of Mother's parental rights under family code section 161.004. That section provides:

> § 161.004. Termination of Parental Rights After Denial of Prior Petition to Terminate
>
> (a) The court may terminate the parent–child relationship after rendition of an order that previously denied termination of the parent–child relationship if:
>
>> (1) the petition under this section is filed after the date the order denying termination was rendered;
>>
>> (2) the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered;

(3) the parent committed an act listed under Section 161.001 before the date the order denying termination was rendered; and

(4) termination is in the best interest of the child.

(b) At a hearing under this section, the court may consider evidence presented at a previous hearing in a suit for termination of the parent–child relationship of the parent with respect to the same child.

TEX. FAM. CODE § 161.004. Subsection (a)(2) is at issue in this appeal.

Under subsection (a)(2), whether circumstances have "materially and substantially changed" since the date of the previous order is a question of fact. *In re H.M.O.L.*, No. 01-17-00775-CV, 2018 WL 1659981, at *11 (Tex. App.—Houston [1st. Dist.] Apr. 6, 2018, pet. denied) (mem. op.). "There are no definite guidelines as to what constitutes a material and substantial change in circumstances under section 161.004." *Id.* (collecting cases). "Rather the determination is made by the facts of each case." *Id.* "A material and substantial change in circumstances may be established by either direct or circumstantial evidence." *Id.*

## DISCUSSION

Mother's issues arise from her contention that there has been no change in circumstances since the trial court's 2019 Order finding that termination was not in the children's best interest.

### 1. Res judicata and collateral estoppel

In her first issue, Mother contends the Department's request to terminate her parental rights is barred by res judicata and collateral estoppel. She contends that no

new issue about "her behavior and actions" has arisen since the 2019 Order and that the Department's evidence related only to her pre-2019 conduct.

The Department responds that Mother has waived this issue because she did not plead res judicata or collateral estoppel, object to the admission of evidence on that basis, or make any argument to bring the matter to the trial court's attention. *See In re I.M.*, No. 06-21-00002-CV, 2021 WL 1991271, at *13 (Tex. App.—Texarkana May 19, 2021, pet. denied) (mem. op.) (res judicata and collateral estoppel defenses were waived when not pleaded or tried by consent). Mother does not provide any citations to the record showing how she preserved this complaint. Her arguments arise from her contention, addressed below in our discussion of her second issue, that there was no material change in circumstances between the 2019 Order and the 2022 Decree. Waiver aside, we conclude that the trial court's ruling is not barred by res judicata or collateral estoppel.

The Department sought modification under family code section 161.004. As explained in *In re T.J.*, No. 11-19-00259-CV, 2020 WL 746765, at *1 n.2 (Tex. App.—Eastland Feb. 13, 2020, no pet.) (mem. op.), "Section 161.004 has been regarded as a mechanism through which the Department may, upon proving a material change in the circumstances of an affected party, defeat a parent's claim of res judicata when the Department seeks termination after a prior petition seeking termination was denied." *See also In re J.R.*, No. 07-12-00003-CV, 2012 WL 1605738, at *3 (Tex. App.—Amarillo May 8, 2012, no pet.) (mem. op.) (same).

Subsection 161.004(a)(3) requires evidence that "the parent committed an act listed under Section 161.001 before the date the order denying termination was rendered." TEX. FAM. CODE § 161.004(a)(3). Section 161.004(b) specifically permits the court to consider evidence from a previous hearing in a suit for termination involving the same parent and child in making the required determinations. *See, e.g., In re N.R.T.*, 338 S.W.3d 667, 678–79 (Tex. App.—Amarillo 2011, no pet.).

Here, the Department offered clear and convincing evidence—mostly undisputed by Mother—that both before and after the 2019 Order, Mother failed to comply with court orders that were made to ensure that Mother had the counseling and other services she needed to provide a safe and stable home for her children. *See In re J.F.C.*, 96 S.W.3d at 266. This evidence was admissible under family code section 161.004(b). TEX. FAM. CODE § 161.004(b); *In re J.R.*, 2012 WL 1605738, at *3. We decide Mother's first issue against her.

**2. Material and substantial change in circumstances**

In her second issue, Mother argues that the Department failed to carry its burden to prove that circumstances have materially and substantially changed since the 2019 Order. Mother argues that nothing has changed. She argues that the Department "is still requesting" that she complete psychological and psychiatric evaluations, parenting classes, and individual counseling, as it has requested since 2017. She argues that the children are still in foster care. They were not moved to an adoptive placement until over a year after the Department sought termination of

–10–

Mother's parental rights, and "[n]o party can guarantee that adoption will occur" since the Department failed to offer any evidence about potential obstacles to the placement.

As we have explained, there are no definite guidelines as to what constitutes a material and substantial change in circumstances under section 161.004. *See In re F.M.E.A.F.*, 572 S.W.3d 716, 725 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). Courts have determined that material and substantial changes have occurred when a parent has failed to complete a family service plan or when permanent adoption has been sought. *See In re M.J.W.*, No. 14-16-00276-CV, 2016 WL 4206046, at *8 (Tex. App.—Houston [14th Dist.] Aug. 9, 2016, pet. denied) (mem. op.) (parent failed to complete a family service plan by failing to visit the child and attend medical appointments); *In re N.R.T.*, 338 S.W.3d at 679 (foster parent sought permanent adoption).

In *In re J.R.*, the court concluded there was evidence to support a finding of material and substantial change even though "much in [the parents'] life has remained the same: unstable." *In re J.R.*, 2012 WL 1605738, at *5. The court continued:

> However, [the parents'] continued instability has manifested itself in new ways, ways that have now impacted their relationships with their children and the Department such that their own circumstances have materially and substantially changed. The Department no longer saw reunification as feasible because [the parents] had failed to complete services since [two years before trial] and had maintained only sporadic, infrequent visits with the girls.

*Id.* Further, two of the children were "with a family who seeks to adopt them both." *Id.* at \*4. Consequently, the court concluded that "the children are significantly closer, both psychologically and logistically, to places in which they seek adoptive families and stability." *Id.*; *see also In re H.M.O.L.*, 2018 WL 1659981, at \*12 (considering changes in adoption prospects as well as parents' continued drug use in determining whether material and substantial change occurred under section 161.004).

Similarly here, Mother's life remains unstable. In the five years since the trial court first ordered her to complete services, Mother has resisted complying or has refused to comply, completing only one requirement after the Department filed its motion to modify. The trial court questioned the parties in some detail about Mother's in-person and virtual visits with the children, and heard evidence that Mother's participation was inconsistent. Mother did not offer any evidence of a plan for reunification with her children. The children have now been in foster care for half of their lives, and the Department offered evidence that all family placement options for the children had been exhausted. *See In re J.R.*, 2012 WL 1605738, at \*5 (citing testimony that children should not "languish in foster care throughout childhood").

Viewing the evidence in the light most favorable to the court's finding, we conclude that the trial court could have formed a firm belief or conviction that a material and substantial change in circumstances had occurred since the trial court

–12–

rendered the 2019 Order. *See In re J.F.C.*, 96 S.W.3d at 266. We decide Mother's second issue against her.

## CONCLUSION

The trial court's June 3, 2022 decree terminating Mother's parental rights to K.C.F. and M.C.F. is affirmed.

220509f.p05

/Leslie Osborne//
LESLIE OSBORNE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF K.C.F. AND
M.C.F., CHILDREN

No. 05-22-00509-CV

On Appeal from the 303rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DF-17-12943-
V.
Opinion delivered by Justice
Osborne. Justices Schenck and Smith
participating.

In accordance with this Court's opinion of this date, the trial court's June 3, 2022 Decree of Termination is **AFFIRMED**.

Judgment entered this 10th day of October, 2022.